UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISON

| | | |
|---|---|---|
| SHANDELL MARIE BRADLEY | * | CASE NO.: 6:15-CV-0459 |
| | * | |
| VERSUS | * | MAGISTRATE JUDGE HANNA |
| | * | |
| LOUIS M. ACKAL, ET AL | * | |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE ORDER

**MAY IT PLEASE THE COURT:**

Capital City Press, LLC d/b/a The Advocate and KATC Communications, LLC ("Movants"), respectfully submit this memorandum in support of their Motion to Vacate this Court's March 15, 2018 Order sealing the settlement in this matter (Rec. Doc. 142).

### I. INTRODUCTION

Movants in this matter are in the business of reporting and publishing news on issues of public concern. The underlying case involves the Plaintiff, Shandell Marie Bradley, on behalf of her minor child, AJW, advancing serious allegations about the Defendant, Sheriff Louis M. Ackal and the co-Defendants, including Ackal's deputies.

The Complaint (Rec. Doc. 1) alleges that AJW's father, Mr. Victor White III, died at the hands of the Defendants' officers and as a result sought to recover damages under 42 U.S.C. § 1983, and various other federal and Louisiana laws, for the violation of rights guaranteed to him by the United States Constitution and the Louisiana State Constitution. The Plaintiff alleged a pattern and practice of excessive force by the Defendants. Mr. White's official cause of death after arrest was a self-inflicted gunshot wound. However, there was a public controversy as to

1

how Mr. White shot himself while handcuffed and after a pat-down by deputies. This controversy drew both local[1] and national press attention.[2]

The facts of this matter are well-summarized by this Honorable Court in its ruling on the Motion for Summary Judgment (Rec. Doc. 91). Following motion practice and approaching a trial date, the matter was settled in a Settlement Conference held before Judge Carol B. Whitehurst on March 15, 2018 (Rec. Doc. 142). The minute entry for that conference states:

> SEALED MINUTES for proceedings held before Magistrate Judge Carol B Whitehurst: SETTLEMENT CONFERENCE held on 3/15/2018. (Court Reporter: LCR, Lafayette - Courtroom 6) (crt,Alexander, E) (Entered: 03/15/2018)

Respectfully, the Court's Order sealing the settlement violates the public's right of access to Court proceedings under the First Amendment to the United States Constitution and acknowledged federal common law. Furthermore, documents related to the settlement of this matter, including the records of payments made by or on behalf of Defendants, are public records subject to inspection pursuant to Article 12, Section 3 of the Louisiana Constitution and the Louisiana Public Records Law, Louisiana Revised Statute §§44:1, *et seq*.

On June 15, 2018 *Advocate* reporter John Simerman received a response to an earlier records request he had made seeking, *inter alia,* the Receipt and Release signed by the Parties in this matter and a copy of the check issued to the Plaintiff. An accounting record of the check, dated April 19, 2018, was included, along with the Receipt and Release, and a notation that the check was issued in full and final settlement of this action. The Receipt and Release indicates that the terms of the settlement were ordered closed by this Honorable Court. The amount of the

---

[1] *Jury Must Decide if Handcuffed Iberia Parish Man in Patrol Car Killed Himself, Federal Judge Rules,* The Advocate, *available at* https://www.theadvocate.com/acadiana/news/crime_police/article_f1261142-b82f-11e7-9ee0-cf9c8ff785ba.html, last accessed July 17, 2018.
[2] *Handcuffed Black Youth Shot Himself to Death, Says Coroner,* NBC News, *available at* https://www.nbcnews.com/news/investigations/handcuffed-black-youth-shot-himself-death-says-coroner-n185016, last accessed July 17, 2018.

check was redacted. When requested, counsel for the Louisiana Sheriffs' Law Enforcement Program, the official public records custodian of the records sought, suggested that the amount was required to be redacted due to this Court's March 15, 2018 Order sealing the record and minutes of the successful settlement conference.

While a Louisiana Public Records Law exemption may not have been the Court's intention, this interpretation of the Court's March 15, 2018 Order currently prohibits a public body from complying with their duty to permit public inspection of the expenditure of public funds. Therefore, Movants respectfully assert that the Order is contrary to the well-established right of the citizens of Louisiana to obtain information regarding the actions of their government, including information "concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state." La. Rev. Stat. Ann. § 44:1. In addition, the Court's entry is at odds with procedural requirements for sealing portions of the record. Movants therefore seek vacatur of this Court's March 15, 2018 Order sealing the settlement (Rec. Doc. 142). For the reasons more fully set forth below, Movants' Motion should be granted.

**II. LAW AND ARGUMENT**

**A. The First Amendment and Federal Common Law Guarantee a Right of Access to Court Proceedings and Court Records.**

The public's constitutional right of access to court proceedings is firmly established and recognized by courts across the country. *See, e.g.*, *Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 571 (1980); *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 505–08 (1984) (*Press-Enterprise I*). The United States Supreme Court has recognized that "a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 604 (1982). The Supreme Court has long held that the First

Amendment guarantees the public's right of access to both civil and criminal court proceedings,[3] observing that "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367 (1947).[4]

In addition to the constitutional right of access guaranteed by the First Amendment, the public enjoys a well-established common law right of access to court proceedings that includes the right to inspect and copy judicial records. In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), the Supreme Court stated that "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."[5] This right of access is grounded in the democratic process itself and is "fundamental to a democratic state." *U.S. v. Mitchell,* 551 F.2d 1252, 1258 (D.C. Cir. 1976) *rev'd on other grounds sub nom. See also Boone v. City of Suffolk, Va.,* 79 F. Supp. 2d 603, 608 (E.D. Va. 1999).

This law has been cited approvingly by this District. *DISH Network, LLC v. WLAJ-TV, LLC*, CV 16-0869, 2017 WL 1333057, at *2 (W.D. La. Apr. 3, 2017), *Harvest Oil & Gas, LLC v. Salsbury*, 11-CV-714, 2012 WL 5354551, at *2 (W.D. La. Oct. 25, 2012). *Slattery Co., Inc. v. Chesapeake Louisiana, LP*, 11-CV-1399, 2014 WL 12659587, at *1 (W.D. La. May 22, 2014).

---

[3] *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *Westmoreland v. CBS, Inc.* 752 F.2d 16, 23 (2d Cir. 1984); *In re Continental III Secs. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1178 (6th Cir. 1983); *Publicker Industrial v. Cohen*, 733 F.2d 1059, 1071 (3rd Cir. 1984); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 124 (2d Cir. 2006); *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988).

[4] *See also Citizens First National Bank of Princeton v. Cincinnati Insurance Company*, 178 F.3d 943, 945 (7th Cir. 1999) (noting that the public pays for the courts and has an interest in what goes on at all stages of a judicial proceeding on that basis alone).

[5] *See also SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (outlining the presumption of access to court records); *Leucadia, Inc. v. Applied Extrusions Technologies, Inc.*, 988 F.2d 157, 161-65 (3rd Cir. 1993) (recognizing "a pervasive common law right to inspect and copy … judicial records and documents"); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir. 1981) (recognizing the public's right of access to judicial records).

The Eastern District of Louisiana's *Marcus v. St. Tammany Parish School Bd.*, No. 95-3140, 1997 WL 313418 (E.D. La. June 9, 1997) may also be instructive.  In *Marcus*, two former employees of the St. Tammany Parish School Board alleged that the former superintendent sexually harassed them. The parties reached a settlement, the settlement was read into the record, and the court issued a minute entry declaring that the terms of the settlement would remain sealed at the parties' request. *Id.* at *2. *The Times-Picayune* moved for access to the transcript of that proceeding, and the motion was granted. In its ruling, the Eastern District cited *SEC v. Van Waeyenberghe*, noting that the public's common law right of access to court records extends to settlement agreements.[6] *Id*. The Court found that:

> The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official. If a settlement agreement involves public officials or parties of a public nature, such a factor weighs against entering or maintaining an order of confidentiality.

*Id*. (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3rd Cir. 1994)). The right of access to settlement agreements has been invoked in other situations as well. *See Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 346 (3rd Cir. 1986) (presumption of access to inspect and copy judicial records applied to a settlement agreement between a hotel developer and bank); *Mullins v City of Griffin*, 886 F. Supp. 21 (N.D. Ga. 1995) (order of confidentiality entered upon settlement of sexual-harassment case involving public employees vacated).

In sum, the public's First Amendment and common law rights of access ensure that citizens have access to the matters that come before their courts. This principle has been recognized in the Western District of Louisiana and in other Districts in the Fifth Circuit. The Fifth Circuit itself has noted several times that the presumption of openness may only be

---

[6] *Van Waeyenberghe,* 990 F. 2d at 849 (when a settlement is filed in district court, "it becomes a judicial record").

overcome by a compelling interest, which is not present in this matter.

    **B.    The Louisiana Constitution and the Louisiana Public Records Law Guarantee the Public's Right of Access to Settlement Agreements.**

The Fifth Circuit has found that when considering a confidentiality order, the reviewing court "should consider the effect of the order on state freedom of information laws." *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 931 (5th Cir. 1996). Article 12, Section 3 of the Louisiana Constitution provides that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."[7] The law further guarantees the public's right of access: "Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record." La. Rev. Stat. Ann. § 44:31.

Louisiana's Public Records Law particularly exists to "implement the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which governmental affairs are conducted." *Trahan v. Larivee,* 365 So.2d 294, 298 (La. App. 3 Cir. 1978). Louisiana courts have consistently held that the Public Records Law must be interpreted liberally so as to extend rather than restrict access to public records. *Dutton v. Guste*, 395 So. 2d 683, 685 (La. 1981) (citing *Webb v. City of Shreveport*, 371 So. 2d 316 (La. App. 2 Cir. 1979)); *Bartels v. Roussel*, 303 So. 2d 833 (La. App. 1 Cir. 1974), *writ denied*, 307 So. 2d 372 (La.

---

[7] The right of access to public records is a fundamental right:

> The right of the public to have access to public records is a fundamental right and is guaranteed by the constitution. . . . The provisions of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see.

*Capital City Press v. East Baton Rouge Parish Metropolitan Council*, 696 So. 2d 562, 564 (La. 1997), (quoting *Title Research Corp. v. Rausch*, 450 So. 2d 933, 936 (La. 1984)).

1975).

The law seeks to "keep the public reasonably informed about how public bodies conduct their business and how the affairs of government are handled." *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press, L.L.C.*, 2007-1088, p. 14-15 (La. App. 1 Cir. 2008); 4 So.3d 807, 817. The *Capital City Press* court particularly recognized that the law protects the public's right to know "about the operations of a public agency, … [and] in gaining information to evaluate the expenditure of public funds." *Id.* at 821. *See also Angelo Iafrate Const., LLC v. State DOTD,* 879 So. 2d 250, 261 (La. App. 1 Cir. 2004) (purpose of Public Records Law is to "keep the public reasonably informed about how public bodies conduct their business and how the affairs of government are handled") (Guidry, J., dissenting).

The Louisiana Supreme Court has held that settlement agreements involving a public body are subject to disclosure under the Public Records Law. *Dutton*, 395 So. 2d at 685; *see also Times Picayune Pub. Corp. v. Board of Sup'rs of Louisiana State University*, 845 So. 2d 599 (La. App. 1 Cir. 2003). A public body's assurance of confidentiality does not transform a public record into a nonpublic record and cannot be enforced. *See Treadway v. Jones*, 583 So. 2d 119, 122 (La. App. 4 Cir. 1991) ("An assurance of confidentiality ... is not sufficient to keep the proposals from being subject to the Public Records Law.").

### C. The Court's March 15, 2018 Order Violates the Public's Right of Access.

The foregoing arguments exemplify the presumption of public access to information relating to the settlement of a lawsuit against a public entity in Louisiana and should be applied in particular to the instant lawsuit. That presumption of the right of access to the public may be overcome only by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Hearst Newspapers, L.L.C.,* 641 F.3d 168, 181 (5th Cir. 2011), *as revised* (June 9, 2011). *Richmond Newspapers*, 448 U.S. at

581 ("an overriding interest articulated in the findings"); *see also Press-Enterprise I*, 464 U.S. at 510 ("an overriding interest based on findings that closure is essential to preserve higher values"); *United States v. Chagra*, 701 F.2d 354, 365 (5th Cir. 1983).

Access may be denied only when: (1) denying access serves a compelling interest; (2) there is a substantial probability that, if access is not denied, this compelling interest would be harmed; and (3) there are no alternatives to denying access that would adequately protect the compelling interest.[8] When balancing the public's right of access against competing interests, a court should ask for what purpose access is sought, whether proper or improper:

> The Supreme Court has suggested that the factors to be weighed in the balancing test include whether the records are sought for improper purposes, such as promoting public scandals or gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.[9]

In the instant case, the Defendant Sheriff agreed to settle claims arising from an alleged deprivation of life and liberty. The public has a compelling interest in understanding what the public official compensated the Plaintiff for the alleged losses. *E.g., Miami Herald Pub. Co. v. Collazo*, 329 So. 2d 333 (Fla. Dist. Ct. App. 1976) (holding that the public's right to know the terms of a settlement agreement were particularly compelling because the case involved allegations of police misconduct).

The Fifth Circuit has held that a district court "must use caution in exercising its discretion to place records under seal," and that discretion to seal the record should be exercised "charily." *United States v. Holy Land Found. For Relief & Dev.,* 624 F.3d 685, 689 (5th Cir.

---

[8] *Washington Post v. Robinson,* 935 F.2d 282, 290 (D.C. Cir. 1991); *Oregonian Pub. Co., v. U.S. Dist. Court for Dist. Of Oregon,* 920 F.3d 1462, 1466 (9th Cir. 1990).

[9] *In re Knight Publishing Co.,* 743 F.2d 231, 235 (4th Cir.1984) (*citing Nixon v. Warner Communications, Inc.,* 435 U.S. at 597-608).

2010). "The power to seal court records must be used sparingly in light of the public's right to access" and the decision "must be made in light of the "strong presumption that all trial proceedings should be subject to scrutiny by the public." *Id.* at 690 (*citing United States v. Ladd,* 218 F.3d 701, 704 (7th Cir. 2000)).

In this matter, there is no countervailing interest sufficient to deny the public information regarding the amount of the settlement. Given the foregoing, Movants respectfully ask that this Court vacate its March 15, 2018 Order sealing the settlement amount so that public may access information in which it has a real interest and to which it is plainly entitled.

### D. The Law Requires Notice, a Hearing, and Specific Findings Before Closure.

"[I]f a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives. If objections are made, a hearing on the objections must be held as soon as possible." *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 183 (5th Cir. 2011), *as revised* (June 9, 2011) (citing *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998)). "These requirements are 'not mere punctilios, to be observed when convenient.'" *Hearst Newspapers,* 641 F.3d at 183 (*citing Phoenix Newspapers*, 156 F.3d at 951). "The trial court cannot properly weigh the First Amendment right of access against the interests served by closure, nor can it fully consider alternatives to closure, without providing notice and an opportunity to be heard to the press and public." *Id.* The press cannot be "expected to camp out in the hallway in order to ascertain whether evidentiary proceedings are being conducted in chambers." *Hearst Newspapers,* 641 F.3d at 183 (citing *United States v. Criden,* 675 F.2d 550, 553 (3rd Cir. 1982)).

This Court has previously found that the burden of closure is "on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Harvest Oil & Gas, LLC v. Salsbury,* No. 11-CV-714, 2012 WL 5354551, at *3

(W.D. La. Oct. 25, 2012) (*citing Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 165 (3rd Cir.1993); *Floral Accounting Systems, Inc. v. Florists' Transworld Delivery, Inc.,* 2008 WL 2224416, *2 (W.D.La.); *Weiss v. Allstate Ins. Co.,* 2007 WL 2377119, *4 (E.D.La.); *Ryan v. Burkhalter,* 2010 WL 2667362, * 1 (M.D.La.)). Judge Doherty in *Salsbury* particularly found that "any doubt must be construed in favor of disclosure." *Id. (citing Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599 (1978); *Marcus v. St. Tammany Parish Sch. Bd.,* 1997 WL 313418, *5 (E.D.La.); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994)).

After notice and hearing, a court may deny the public's rights of access only after "specific, substantive findings made by the district court that closure is necessary to protect higher values" *Hearst Newspapers,* 641 F.3d at 181. Sealing must be "strictly and inescapably necessary." *See, e.g., United States v. Antar*, 38 F.3d 1348, 1361-63 (3rd Cir. 1994); *The Associated Press v. United States District Court*, 705 F.2d 1143, 1145-46 (9th Cir. 1983); *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). Every closed proceeding or sealed document requires an independent determination, based on particularized findings. *E.g., United States v. Chagra*, 701 F.2d 354, 364-65 (5th Cir. 1983); *see also Associated Press*, 705 F.2d at 1147; *United States v. Ladd*, 162 F.3d 503, 505-07 (7th Cir. 1998).

Here, there was no notice and no hearing, and there were no specific findings on the record that a compelling governmental interest makes sealing the settlement "strictly and inescapably necessary." Therefore, the sealing was improper and should be vacated.

### III. CONCLUSION

The access issues presented in this case are a matter of great public concern. The public unquestionably has a right to know the amount of money paid to the Plaintiff in recompense for

her tragic loss. Movants respectfully ask that this Honorable Court reconsider and vacate its order sealing the settlement of this lawsuit, and that it do so on an expedited basis.

Respectfully submitted:

**STERNBERG, NACCARI & WHITE, LLC**

/s/ Scott L. Sternberg
**SCOTT L. STERNBERG**, **T.A.** La. Bar No. 33390
**MICHAEL S. FINKELSTEIN**, La. Bar No. 35476
643 Magazine Street, Suite 402
New Orleans, Louisiana 70130
Telephone: 504.324.2141
Facsimile:   504.534.8961
scott@snw.law | michael@snw.law

*Attorneys for Capital City Press, LLC d/b/a The Advocate and KATC Communications, LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served on all parties or their counsel of record by the Court's CM/ECF system on July 19, 2018.

/s/ Scott L. Sternberg
**STERNBERG, NACCARI & WHITE, LLC**