| | |
|---|---|
| SHANDELL MARIE BRADLEY, ET AL. | CIVIL ACTION NO. 6:15-cv-00459 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| LOUIS ACKAL, ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Currently pending is the motion to vacate a court order (Rec. Doc. 153), which was filed by the intervenors, Capital City Press, LLC d/b/a The Advocate and KATC Communications, LLC. The motion is opposed. Oral argument was held on July 26, 2018, and post-hearing briefing was ordered. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## Background

On March 3, 2014, Victor White, III was arrested by Iberia Parish sheriff's deputies, handcuffed, placed in the back seat of a patrol unit, and driven to the parking lot of the Iberia Parish Sheriff's Patrol Center. While in the custody of the Iberia Parish Sheriff's Office, still in the back seat of the patrol car, and with his hands still handcuffed behind his back, Mr. White died as the result of a single gunshot wound. Thereafter, this lawsuit was filed on behalf of Mr. White's minor child, seeking to recover from the Iberia Parish Sheriff's Office, Sheriff Louis M.

Ackal, and Deputy Sheriff Justin Ortis under federal and state law for, *inter alia*, the alleged violation of Mr. White's constitutional rights and his allegedly wrongful death. On March 15, 2018, Magistrate Judge Carol B. Whitehurst held a settlement conference in the case, and an amicable resolution of the dispute was reached. The terms of the settlement, in the form of an audiotaped statement by counsel, were placed on the record under seal at the request of the parties.

Thereafter, the Advocate and KATC were permitted to intervene in this action for the purpose of arguing the instant motion, which seeks to have this Court vacate Judge Whitehurst's order sealing the terms of the settlement. The intervenors contend that the order sealing the settlement violates the public's First Amendment right of access to court proceedings and the common law right of access to court documents. They further contend that the settlement documents, particularly those stating the amount paid to settle the plaintiff's claims, are public records subject to inspection under Louisiana law. The plaintiff contends, to the contrary, that the public's right to know the amount paid to settle the lawsuit must yield to her interest in keeping her child free from the notoriety and harassment that would likely follow from public knowledge of the settlement amount.

At the hearing, counsel for the movants explained that they had received copies of the settlement documents from the Louisiana Sheriffs' Law Enforcement

Program pursuant to a Freedom of Information Act request but the amount on the settlement check was redacted. Counsel for the movants clarified that it is only the amount of the settlement that the intervenors are seeking to have revealed to the public. This Court asked the parties to submit supplemental briefs. In particular, this Court asked the movants to address (a) whether they were requesting that Judge Whitehurst's order sealing the recording of the parties' placing of the settlement agreement on the record be vacated or whether they were requesting that the defendants be ordered to reveal the amount of the settlement; (b) whether Louisiana's public records laws[1] or sunshine laws[2] are applicable to the dispute; (c) how the court should balance the public's interest in knowing the amount of the settlement, the minor's interest in being protected from the disclosure of the amount of the settlement, and the court's interest in protecting the judicial process; and (4) any other relevant factors. The plaintiff was afforded an opportunity to respond. The parties complied with the order and submitted post-hearing briefs.

## Analysis

---

[1] La. R.S. 44:31 *et seq*. Notably, La R.S. 44:31(B)(1) states that "[e]xcept as otherwise provided in this Chapter or as otherwise specifically provided by law. . . any person of the age of majority may inspect, copy, or reproduce any public record."

[2] La. R.S. 42:11 *et seq*. (also known as the "Open Meetings Law.")

The public has a well-established First Amendment right of access to criminal proceedings.[3]  At least one court in the Fifth Circuit has held that this right of access extends to civil trials,[4] and the Fifth Circuit has said, in the context of a civil case, that "First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings."[5]  The United States Supreme Court has also noted that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."[6]  The public also has a common law right to inspect and copy judicial records, but that right is not absolute.[7]  "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."[8]  Thus, "the common law merely establishes a presumption of

---

[3]     See, e.g., *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (holding that absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public); *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168 (5th Cir. 2011) (regarding the closure of a courtroom during the sentencing of a convicted criminal); *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501 (1984) (regarding the closure of a courtroom during voir dire).

[4]     *Doe v. Santa Fe Independent School District*, 933 F.Supp. 647, 650 (S.D. Tex. 1996).

[5]     *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

[6]     *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).

[7]     *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).

[8]     *Nixon v. Warner Communications, Inc.*, 435 U.S. at 598.

public access to judicial records,"[9] and the decision as to access is one left to the sound discretion of the trial court."[10]  A district court should exercise its discretion both cautiously[11] and "in light of the relevant facts and circumstances of the particular case"[12] since a number of factors may militate against public access.[13]  Thus, "[i]n exercising its discretion to seal judicial records, a court must balance the public's common law right of access against the interests favoring nondisclosure."[14]  The principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself.[15]  It "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to

---

[9]     *SEC v. Van Waeyenberghe*, 990 F.2d at 848.

[10]    *Nixon v. Warner Communications, Inc*., 435 U.S. at 599.

[11]    *Federal Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

[12]    *Nixon v. Warner Communications, Inc.*, 435 U.S. at 599.  See, also, Belo *Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981).

[13]    *Belo Broadcasting Corp. v. Clark*, 654 F.2d at 434.

[14]    *SEC v. Van Waeyenberghe*, 990 F.2d at 848.  See, also, *Belo Broadcasting Corp. v. Clark*, 654 F.2d at 434.

[15]    *United States v. Holy Land Foundation For Relief and Development*, 624 F.3d 685, 690 (5th Cir. 2010).

provide the public with a more complete understanding of the judicial system, including a better perception of its fairness."[16]

This motion is concerned not with the specific terms and provisions of a settlement agreement; rather, the intervenors only want to know the amount paid on behalf of a political subdivision and its employees to settle a civil lawsuit. The Fifth Circuit has found that "[o]nce a settlement is filed in district court, it becomes a judicial record."[17] Although no settlement "document" was filed in this proceeding, the basic terms of the agreement were recited into the record, including the amount paid to compromise the plaintiff's claims. Therefore, it is arguable that the recited terms are subject to the balancing test that must be applied to determine whether the contents of a judicial record should be disclosed to the public.

## The Relief Requested

The intervenors represented to this Court, in their supplemental briefing, that the Louisiana Sheriffs' Law Enforcement Program was "the official public records custodian" of the records sought to be produced. The intervenors further represented that the Louisiana Sheriffs' Law Enforcement Program responded to a Freedom of

---

[16]    *United States v. Holy Land Foundation*, 624 F.3d at 690 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 682 (3rd Cir. 1988)).

[17]    *SEC v. Van Waeyenberghe*, 990 F.2d at 849.

Information Request seeking copies of the settlement documents by indicating that the amount of the settlement "was required to be redacted due to this Court's March 15, 2018 Order sealing the record and minutes of the successful settlement conference." (Rec. Doc. 153-1 at 3). For that reason, the movants "seek vacatur of this Court's March 15, 2018 Order sealing the settlement." (Rec. Doc. 153-1 at 3). Since the Louisiana Sheriffs' Law Enforcement Program was not a party to this lawsuit, an order by this Court unsealing an order of Judge Whitehurst would not require the Louisiana Sheriffs' Law Enforcement Program to do or not do anything. **Can this Court Vacate Another Judge's Order?**

The first issue that must be considered is whether this Court has the authority to vacate the order that was issued by another judge sealing the terms of the parties' settlement agreement. Although this lawsuit is assigned to the undersigned Magistrate Judge, a different Magistrate Judge in the same division conducted the settlement conference on March 15, 2018. As the presiding judge, this Court did not participate in that process at all. During the settlement conference, the parties agreed to an amicable resolution of their dispute after extensive negotiations that were conducted in confidence. Rather than drafting a settlement agreement at that time, the terms of the settlement were placed on the record by means of an audiotaped recording of the parties' counsel orally reciting the terms of the agreement. That

7

recording was placed under seal. The intervenors suggest that this Court should have interrupted another judge's court proceeding in order to make findings as to the factors weighing in favor of and against sealing the terms of the settlement just reached by the parties before the other judge's order was entered. Not being privy to the details of the proceeding as it was ongoing, as a practical matter this Court would not consider injecting itself into another court's proceeding and whether the undersigned has the authority to vacate another judge's order was not addressed by the intervenors in their briefing. Furthermore, the parties to a settlement agreement may agree to keep the terms and provisions of their settlement confidential by entering into a contractual agreement saying just that. Therefore, since the parties requested that the record be sealed, it may be that Judge Whitehurst's order was nothing more than recognition of an agreement between the parties. If so, then there may be no basis on which this Court is authorized to step in and alter the parties' agreement. This issue also was not addressed by the intervenors.

**The Involvement of a Government Actor**

The intervenors argued that the amount paid in settlement of the plaintiff's claims should be disclosed to the public because the defendants in this case are governmental entities, officials, or employees. In support of this argument, the

intervenors cited a district court case from the Eastern District of Louisiana[18] that quoted a decision from the Third Circuit Court of Appeals, which has appellate jurisdiction over the district courts for Delaware, New Jersey, and Pennsylvania. In that decision, the Third Circuit stated that the "public's interest is particularly legitimate and important where . . . at least one of the parties to the action is a public entity or official"[19] and further stated that "[i]f a settlement agreement involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality."[20] This Court located no decision in which the Fifth Circuit Court of Appeals relied on the quoted reasoning from the Third Circuit's decision, but did find decisions in which this same language was cited by district courts in the Fifth Circuit – but never by the Western District of Louisiana. Thus, there is no controlling jurisprudence requiring that the scales be tipped in favor of disclosure of a settlement agreement simply because one of the parties is a governmental entity.

---

[18] *Marcus v. St. Tammany Parish School Board*, No. Civ. A 95-3140, 1997 WL 313418 at *5 (E.D. La. June 9, 1997).

[19] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994).

[20] *Pansy v. Borough of Stroudsburg*, 23 F.3d at 788.

Upon closer examination, it is also apparent that the cited decision from the Third Circuit actually does not stand for the proposition for which it was cited. In that case, a former public official – a former police chief – had sued the borough by which he was formerly employed. He alleged that his civil rights were violated when he was demoted and suspended before being charged with crimes for which he was tried and acquitted. It was the former chief who was seeking to maintain the confidentiality of a settlement agreement he reached with the governmental entity that had formerly employed him. The court explained that "[i]t is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny."[21] Consistently, the court said that a factor to be considered in conducting the balancing test is "whether a party benefitting from the order of confidentiality is a public entity or official."[22] Thus, the lesson from the cited case is not the one espoused by the intervenors here. The decision does not stand for the proposition

---

[21]     *Pansy v. Borough of Stroudsburg*, 23 F.3d at 787.

[22]     *Pansy v. Borough of Stroudsburg*, 23 F.3d at 788.

that disclosure should be favored each and every time a public or governmental entity is a party to the settlement agreement; rather, the ruling states that disclosure should be favored when it is a public person or governmental entity that is seeking to prevent disclosure of the settlement agreement. That is not the situation presented here, as the person seeking to prevent disclosure is a private party acting on behalf of a minor child. Therefore, the cited decision is neither controlling nor persuasive.

## Factors for Rebutting the Presumption in Favor of Disclosure

Next, the intervenors argue that the settlement agreement should be disclosed to the public because the plaintiff has not articulated a countervailing "overriding interest." They contend that "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."[23] That, however, is the standard that was used by the United States Supreme Court in deciding whether voir dire conducted during a criminal trial should be closed to the public. The Fifth Circuit has instructed that a court called upon to decide whether, in its discretion, judicial records should be sealed must simply balance the public's common law right

---

[23] *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. at 510 (closure of courtroom during voir dire).

of access against any interests favoring nondisclosure.[24]  Indeed, the Fifth Circuit expressly distinguished the standard applicable to a First Amendment dispute regarding court access from that applicable to a dispute regarding access to judicial documents under the common law and declined to apply the more stringent standard in a case where broadcasters sought the production of exhibits filed with the court.[25] The court found that, in denying the request for access to the relevant materials, the district court did not abuse its discretion.[26]

The movants cited several cases in which settlement agreements were disclosed but most of them did not involve the settlement of a civil lawsuit on behalf of a minor.[27]  This Court finds those cases to be distinguishable for that reason.

The movants rely in large part on the decision reached in the *Fort Totten Metrorail Cases*,[28] a case that did involve a dispute regarding the disclosure of the terms of minors' settlements following a train collision.  In *Fort Totten*, the court

---

[24]     *SEC v. Van Waeyenberghe*, 990 F.2d at 848.

[25]     *Belo Broadcasting Corp. v. Clark*, 654 F.2d at 434.

[26]     *Belo Broadcasting Corp. v. Clark*, 654 F.2d at 434.

[27]     *SEC v. Van Waeyenberghe*, 990 F.2d at 848 (5th Cir. 1993); *Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3rd Cir. 1986); *Marcus v. St. Tammany Parish School Board*, No. 95-3140, 1997 WL 3131418 (E.D. La. June 9, 1997); *Mullins v. City of Griffin*, 886 F.Supp. 1 (N.D. Ga. 1995).

[28]     *Fort Totten Metrorail Cases*, 960 F.Supp.2d 2 (D.C. Cir. 2013).

applied a six-factor test based on a previous decision from the D.C. Circuit that is not binding on this Court. The test required the court to consider (1) the need for public access to the documents at issue, (2) the extent of previous public access to the documents, (3) the fact that someone objected to disclosure and the identity of the person who objected, (4) the strength of any property and privacy interests asserted, (5) the possibility of prejudice to the party opposing disclosure, and (6) the purposes for which the documents were introduced during the judicial proceeding. The defendants asserted that documents relating to certain minors' settlements of their claims against a governmental entity following a train collision should be protected from disclosure to the public on the basis that it might expose the minors to the potential avarice and ill will of those who may not share the minors' best interests and could result in the minors receiving ill-intentioned attention from persons who would have no interest in them but for their receipt of settlement funds. In other words, the same argument that the plaintiff is making in this case was presented. But there is an important distinction. In *Fort Totten*, that argument was not advanced on behalf of the minors; instead, it was advanced by the governmental entity defendants. The court found that the defendants did not have standing to raise these concerns on behalf of the minors and further noted that the minors did not raise the particular privacy concerns that the defendants attempted to assert on the minors'

behalf.  Thus, while the *Fort Totten* case is interesting, the factors considered there are not controlling on this Court, and the balancing of interests set forth in that case cannot serve as a guidepost for the resolution of this case.

Another important distinction between the minors' settlements at issue in the *Fort Totten* case and the settlement that was reached in this case is that the settlements in *Fort Totten* were not valid unless approved by a judge in the court where the action was pending, under the law applicable in that venue.  Therefore, the purpose for which the documents were introduced was a factor that weighed heavily in favor of disclosure.  In this case, however, there was no requirement that the settlement be approved by either the Magistrate Judge presiding over the settlement conference or by this Court.  The Fifth Circuit has stated that the presumption in favor of public disclosure generally applies to settlement agreements that are filed and submitted to the district court for approval.[29]  In this case, the settlement agreement was not filed in the suit record nor was the settlement agreement submitted to the court for approval.

This is similar to what occurred in *Pansy v. Borough of Stroudsburg*,[30] a Third Circuit case cited by the intervenors.  There, the court issued an order stating that it

---

[29]    *SEC v. Van Waeyenberghe*, 990 F.2d at 849.

[30]    Cited supra.

had reviewed the terms of the settlement, the terms of the settlement were confidential, and the parties were ordered to abide by the order of confidentiality.[31] The court held that the settlement agreement was not a judicial document subject to the right of access doctrine because it had not been filed with the court, interpreted by the court, or enforced by the court.[32] That logic coincides with the Fifth Circuit's description of those settlement agreements to which the presumption in favor of public disclosure applies.

Therefore, in this case, the same significance cannot be placed on this factor – the purpose for which the document was introduced during the judicial proceeding – as the court did in *Fort Totten*. Here, the settlement terms were placed on the record as a means of quickly memorializing them without having to confect a written document at the conclusion of the settlement conference. But in *Fort Totten*, the court was required to approve the minors' settlements. Moreover, in the *Fort Totten* case only this factor and one other – the need for public access to the documents – weighed in favor of disclosure; three others weighed against disclosure, and one factor was neutral. The court found that the weight of those two factors overcame the remaining factors. Thus, it is clear that the court placed a great deal of reliance

---

[31]     23 F.3d at 776.

[32]     23 F.3d at 781.

on the fact that court approval of the settlements was necessary.  In this case, that factor that weighed heavily in favor of disclosure is completely absent.  Therefore, the same result is not mandated.

## Agreed-Upon Confidentiality

This Court understands that, at the conclusion of the settlement conference, the parties asked the Magistrate Judge presiding over the conference to seal the record with regard to the terms of the settlement agreement, including but not limited to the amount paid by the defendants to resolve the dispute.  This Court does not know whether keeping the settlement terms confidential was a factor in the parties' decision to settle.  However, the *Fort Totten* case recognized that the parties' reliance on an agreement to maintain confidentiality is a valid consideration in balancing the interests and may counsel against the disclosure of sealed documents.[33]  Therefore, if the parties to the settlement agreement mutually agreed upon confidentiality as a condition of their settlement, this factor weighs against public disclosure.

## Protection of the Child

It is axiomatic that the protection of children is a laudable goal.  In this case, the plaintiff seeks to maintain confidentiality of the settlement amount in order to

---

[33]     *Fort Totten Metrorail Cases*, 960 F.Supp.2d at 9.

protect her minor child from unwanted solicitors and financial predators, and she argues that this interest outweighs the public's right to know the amount of the settlement. Although this Court was unable to locate a Fifth Circuit case directly on point, the Seventh Circuit has recognized that the privacy of children may constitute a compelling interest that outweighs the presumption in favor of public access.[34] Louisiana statutes reflect a public policy favoring the confidentiality of juvenile court proceedings involving children.[35] This is consistent with the United States Supreme Court's observation that safeguarding the physical and psychological well-being of a minor is a compelling interest.[36]

Two district court cases in the Fifth Circuit have considered this issue but not in the context of a minor's settlement of a lawsuit. In *BG, III v. Banks*,[37] the court found that the interests favoring nondisclosure outweighed the public's common law right to access judicial records. There, the defendants had attached as exhibits to a

---

[34]    *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) ("When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed.").

[35]    *Jaufre ex rel. Jaufre v. Taylor*, 351 F.Supp.2d 514, 517 (E.D. La. 2005) (citing La. Ch. Code Arts. 307, 407, and 412).

[36]    *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 607 (1982).

[37]    *BG, III v. Banks*, No. 4:16-CV-64-DMB-JMV, 2017 WL 318836, at *3 (N.D. Miss. Jan. 23, 2017).

motion for summary judgment a minor child's "Youth Court File" and some affidavits referencing that file. The appellate court agreed with the trial court that because the plaintiff was a child, he was owed additional protections from having the public review the documents. The court also found that public disclosure of the exhibits could have a negative effect on the child as an adult. Finally, the court observed that the case did not present any particular risk of calling into question the trustworthiness of the judicial process. Therefore, although the court found that the best interest of a child did not always outweigh the public's right to access court documents, the minor's interest was paramount.

In *Jaufre ex rel. Jaufre v. Taylor*,[38] the plaintiff's minor son attended "Court School," a joint venture between the St. Charles Parish School Board, the St. Charles Parish Sheriff's Office, and the 29th Judicial District Court for St. Charles Parish, Louisiana, for children with disciplinary problems. The plaintiff sued when her son was subjected to corporal punishment without her permission. The parties reached a settlement of their dispute and sought to seal the record in the interest of justice. To reiterate, the issue was not whether the terms of the settlement agreement should be sealed but whether the *entire record* should be sealed. The court balanced the

---

[38]     Cited supra.

interests, noting (1) that while the case involved the privacy interest of the minor child, it also involved allegations of abuse by a public office; (2) that the plaintiff did not file a brief in support of the motion to seal and therefore did not explain how the disclosure would be injurious; (3) that the parties had previously filed exhibits without seeking a protective order, which allowed the public to have access to them; and (4) that the record contained a lot of general information not likely to be stigmatizing or embarrassing. Therefore, the court sealed only certain parts of the record, including detailed descriptions of the minor's behavioral problems, pictures of his injuries, his deposition testimony, and certain arguments of counsel.

While both of these cases had to do with protecting sensitive information concerning a child's medical or psychological conditions, his school disciplinary records, or other similar topics from disclosure, neither addressed whether the amount of a settlement paid to a minor child should be protected from disclosure to the public. What is illustrative is the extent to which both involved a balancing of a minor child's interest but allowing public disclosure where appropriate.

In this case, the record is replete with the factual details of the events that form the subject matter of this litigation that were put forth by the parties and the rulings of this Court. This Court went into explicit detail in its memorandum ruling of October 23, 2017, and no part of that ruling or the exhibits offered by the parties in

support of their legal positions were sealed from the public. The only thing the intervenors want, as admitted in open court, is the amount that was agreed to be paid to a minor child after extensive, confidential negotiations concerning highly contested and emotionally charged issues. The decisions reached by the parties were undoubtedly reached after the normal give and take associated with any mediation, and that process is also confidential. Indeed, under Louisiana law, the oral and written communications and records made during mediation are generally protected from disclosure.[39] Therefore, this Court is of the opinion that the minor child's interest in being protected from potential predators is a factor that outweighs the public's interest in knowing the amount of the settlement.

## Louisiana's Public Records Laws Do Not Apply

The intervenors argued that whether the settlement amount should be disclosed is an issue implicating Louisiana's public records laws. But what Judge Whitehurst sealed was an audiotaped recording made in the federal courthouse in Lafayette, Louisiana at the conclusion of the parties' settlement conference. That recording is not a document subject to Louisiana's public records laws. The parties are not asking this Court to decide whether the check written on behalf of the

---

[39] La. R.S. 9:4111.

defendants to settle the plaintiff's claims should be disclosed to the public.  To the contrary, the intervenors are asking this Court to vacate a court order sealing a recording.  Those are two very different things.  While a dispute concerning the former might implicate Louisiana's public records laws, this Court cannot fathom how a request to vacate a court order does so.

**Chilling Effect on Other Cases**

Several other Section 1983 lawsuits involving claims of excessive force similar to those asserted by the plaintiff in this suit remain pending in this forum against some of the same defendants.  In *Fort Totten*, one of the factors considered in balancing the parties' interest was the possibility of prejudice to those opposing disclosure, and the defendants argued that disclosing the amounts of the minors' settlements would complicate their ability to settle with the remaining plaintiffs and taint future jury pools.  The court found this factor to be neutral, relying on cases from the Seventh and Ninth Circuits that downplayed the significance of this concern.  The parties cited to no similar jurisprudence from the Fifth Circuit.

In this case, this Court respectfully disagrees with the decisions of the other circuit courts.  In some of the remaining cases against the Iberia Parish Sheriff's Office, significant and volatile allegations were asserted.  These civil cases must play out against the backdrop of the recent criminal prosecution of the sheriff himself

21

and the guilty pleas of several of his deputies with regard to the use of excessive force in making arrests and during the incarceration of prisoners in the parish jail. While each case must be resolved on its own merit, and therefore, what one plaintiff may receive should have no bearing on what another may receive, revealing the amount of the settlement reached in this case might have a chilling effect on potential settlement negotiations in the other cases. This Court believes this is a valid concern.

**Balancing the Interests**

This Court finds that the interests to be balanced in this case are, on one side, the child's privacy interest in being protected from financial predators or those who would harass the child simply because they know the amount received when the suit was settled, the protection of the judicial process in permitting orders to be sealed, and the chilling effect that the public's knowledge of the settlement amount might have on the settlement negotiations and jury deliberations in upcoming similar cases and, on the other side, the media's interest in releasing a sensational story regarding the amount of money paid to resolve this lawsuit without knowing anything about how the decisions were ultimately reached in the parties' settlement negotiations. Exercising its discretion, as it is authorized to do, this Court finds that the minor child's privacy interest outweighs the public's right to know the amount paid to settle the case.

## **Conclusion**

For the foregoing reasons,

IT IS ORDERED that the motion to vacate order (Rec. Doc. 153), which was filed by the intervenors, Capital City Press, LLC d/b/a The Advocate and KATC Communications, LLC is DENIED.

Signed at Lafayette, Louisiana, this 31st day of August 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE