# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2020

Lyle W. Cayce
Clerk

No. 18-31052

SHANDELL MARIE BRADLEY, Tutrix on behalf of her minor child AJW,

> Plaintiff - Appellee

v.

LOUIS M. ACKAL, Individually and in his official capacity; JUSTIN ORTIS, Individually and in his official capacity; XYZ DEPUTIES, Individually and in their official capacity; XYZ INSURANCE COMPANY, on behalf of Sheriff's Office Iberia Parish,

> Defendants - Appellees

v.

CAPITAL CITY PRESS, L.L.C., doing business as The Advocate; KATC COMMUNICATIONS, L.L.C.,

> Movants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana

No. 18-31052

Before JOLLY, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Appellants Capital City Press, L.L.C., doing business as *The Advocate*, and KATC Communications, L.L.C. appeal from the district court's order denying vacatur of sealing orders. We REVERSE and VACATE the sealing orders in their entirety.

## I. BACKGROUND

Iberia Parish, Louisiana, sheriff's deputies arrested and handcuffed Victor White III, then placed him in the back seat of a patrol car. White was then driven to the Iberia Parish Sheriff's Patrol Center parking lot where he died from a single gunshot to the right side of his chest. White was still in custody, handcuffed, and in the patrol car when he was shot. The coroner's report associated with White's death states that White committed suicide. A Louisiana Department of Public Safety and Corrections shooting report states that White produced the gun he allegedly shot himself with while he was in the patrol car. However, prior to his being handcuffed, White was patted down. Nonetheless, the report stated that the sheriff's deputy who conducted the pat down "just overlooked finding [the gun] during the pat-down searches."

Following White's death, Appellee Shandell Marie Bradley filed this lawsuit on behalf of her and White's minor child, AJW[1]—bringing claims under federal and state law for alleged violations of White's and AJW's rights[2]—against Defendants Iberia Parish Sherriff Louis M. Ackal and Deputy Sherriff

---

[1] Although Bradley amended her original complaint to include White's parents—Victor White, Sr. and Vanessa White—as plaintiffs, White's parents were subsequently dismissed from the action.

[2] Specifically, Bradley brought 42 U.S.C. § 1983 claims, alleging that Defendants subjected White to excessive force and acted with deliberate indifference to his medical needs in violation of the Fourth, Eighth, and Fourteenth Amendments, and that Defendants deprived AJW of the right to familial relations. Additionally, Bradley asserted wrongful death, survival, negligence, and assault and battery claims under Louisiana state law.

No. 18-31052

Justin Ortis in their official and individual capacities. Notably, Bradley contended that White "was killed at the hands of Iberia Parish Sheriff's Deputies" and did not commit suicide.

The case was initially assigned to U.S. District Court Judge Rebecca F. Doherty. With the parties' consent, Judge Doherty referred the case to Magistrate Judge Patrick J. Hanna "to conduct all further proceedings and the entry of judgment." Subsequently, Defendants moved for summary judgment. The district court granted, in part, and denied, in part, the motion.[3]

Prior to the trial date, Magistrate Judge Carol B. Whitehurst conducted a settlement conference at which the parties settled the case. After the settlement conference, the parties stated, on the record, the terms of the settlement, including the settlement amount. During this post-conference meeting, Magistrate Judge Whitehurst ascertained Bradley's competence and the parties further agreed that they would keep the settlement terms confidential. Magistrate Judge Whitehurst then issued a confidentiality order from the bench, preventing White's parents—non-parties who were present at the post-conference meeting—from sharing the terms of the settlement agreement.[4] At the request of Bradley's counsel, Magistrate Judge Whitehurst also sealed the recording of the post-conference meeting, and later entered sealed minutes regarding the settlement conference and post-conference meeting. The parties did not file a written settlement agreement with the court. Following the post-conference meeting, Magistrate Judge Hanna dismissed the case.

---

[3] The district court granted the motion only as to Bradley's Eighth Amendment claim. The motion was otherwise denied.

[4] Magistrate Judge Whitehurst specified that the confidentiality order applies to White's parents and did not state that the order applies to anyone else.

No. 18-31052

Appellants moved to intervene.  Magistrate Judge Hanna granted the motion following a hearing.  Appellants then moved to vacate the district court's orders "sealing the record and minutes" of the post-conference meeting under the Louisiana Public Records Law, La. Rev. Stat. Ann. § 44:1, *et seq.*, and First Amendment and common law rights-of-access doctrine.  Appellants sought to vacate the sealing orders so that they could obtain the settlement amount through a public records request.

It is undisputed that Appellants were unable to obtain the settlement amount through a previously-filed public records request.  Specifically, a reporter for *The Advocate* sought "an accounting record of the check issued in full and final settlement of this matter" from the Louisiana Sheriffs' Law Enforcement Program, which Appellants posit is the official public records custodian of the check.  In response, the reporter received a copy of (1) a "Receipt and Release," which noted that the settlement terms were contained within the sealed record of the district court, and (2) the settlement check that was issued to Bradley's counsel with the amount redacted.  Appellants represented that counsel for the Louisiana Sheriffs' Law Enforcement Program "suggested that the amount was required to be redacted due to [the district court's orders] sealing the record and minutes" of the post-settlement conference meeting.

Bradley opposed Appellants' motion for vacatur.  No other party opposed the motion.  Magistrate Judge Hanna denied the motion.

## II. JURISDICTION

Despite Bradley's arguments to the contrary, we have jurisdiction over this appeal under 28 U.S.C. § 1291, which provides, "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]"  Under the collateral order doctrine, "certain decisions of the district court are final in effect although they do not dispose of the

4

No. 18-31052

litigation." *Davis v. East Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 925 (5th Cir. 1996). Appealable collateral orders include "those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Id.* (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)).

An appealable collateral order must resolve a question that is not only "important or serious," but also "unsettled." *Chaves v. M/V Medina Star*, 47 F.3d 153, 155 (5th Cir. 1995). A decision that an order is "effectively unreviewable" on appeal must be made "on a categorical basis, looking only at whether the class of claims, taken as a whole, can be vindicated by other means than immediate appeal." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019) (citation and internal quotation marks omitted). "Sealing and unsealing orders . . . are reviewable . . . under the collateral order doctrine." *Id.* at 448 ("Equally pertinent to this case, non-litigant parties lack appellate remedies available to the contenders in litigation."); *see also Davis*, 78 F.3d at 926 (holding, in the First Amendment context, that "members of the news media, although not parties to litigation, can appeal court closure orders or confidentiality orders under the collateral order doctrine."); *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011) (same).

Here, the decision denying vacatur of the sealing orders is appealable under the collateral order doctrine. First, the decision is conclusive. Second, the decision addresses important and unsettled questions of law concerning the Louisiana Public Records Law and Appellants' First Amendment and common law rights to access settlement agreement information contained in a sealed court recording and sealed minutes, particularly where a minor's privacy interests are involved. And the subject of the decision is completely

No. 18-31052

separable from the merits of the litigation. Third, the decision would be effectively unreviewable on appeal from final judgment. The decision resolves Appellants' motion to vacate sealing orders and Appellants are members of the news media. For these reasons, the court has jurisdiction over this appeal under the collateral order doctrine.

Bradley nonetheless argues that the court lacks jurisdiction over this appeal because Magistrate Judge Hanna could only make recommendations to a district court judge. Bradley argues that, to establish jurisdiction, Appellants should have filed objections to Magistrate Judge Hanna's order pursuant to Federal Rule of Civil Procedure 72 so that the presiding district court judge could rule on them. These arguments are unavailing.

Upon the parties' consent, Judge Doherty referred the case to Magistrate Judge Hanna "to conduct all further proceedings and the entry of judgment." The Federal Magistrate Act of 1979 provides that, "[u]pon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1). "Unlike nonconsensual referrals of pretrial but case-dispositive matters under § 636(b)(1), which leave the district court free to do as it sees fit with the magistrate judge's recommendations, a § 636(c)(1) referral gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003). "A judgment entered by 'a magistrate judge designated to exercise civil jurisdiction under [§ 636(c)(1)]' is to be treated as a final judgment of the district court, appealable 'in the same manner as an appeal from any other judgment of a district court.'" *Id.* (quoting § 636(c)(3)). In short, Magistrate Judge Hanna's order denying vacatur should

No. 18-31052

be treated the same as a district court judge's order for the purposes of appealability.

To the extent that Bradley further argues that Magistrate Judge Hanna did not have the authority to vacate Magistrate Judge Whitehurst's sealing orders, this argument is also unavailing.  *See* FED. R. CIV. P. 60(b) ("[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ."); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 826 (5th Cir. 1990) ("A court is free to vacate an interlocutory order on its own motion."); *see also Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016) ("It is well established that a federal court may consider collateral issues after an action is no longer pending[.]") (citation and internal quotation marks omitted); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141–42 (2d Cir. 2004) ("A district court that concludes that there is a public right of access to judicial documents . . . acts within its jurisdiction when it modifies or vacates a protective order to allow that access, irrespective of whether it does so before or after a stipulation of dismissal has been filed.") (collecting cases).

For the foregoing reasons, we have jurisdiction over this appeal.

## III. STANDARD OF REVIEW

We review a district court's denial of a motion to vacate a confidentiality or sealing order for abuse of discretion.  *See Vantage Heath Plan, Inc.*, 913 F.3d at 450; *Ford v. City of Huntsville*, 242 F.3d 235, 241 (5th Cir. 2001); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).  "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."  *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)).

No. 18-31052

IV. ANALYSIS

Appellants argue that the district court erred in failing to properly consider Appellants' rights of access to the sealed recording and minutes under common law, the Louisiana Public Records Law, and the First Amendment. Because we conclude that the district court abused its discretion in its consideration of Appellants' common law right of access, we do not address Appellants' additional arguments.

The public "has a common law right to inspect and copy judicial records." *Van Waeyenberghe*, 990 F.2d at 848. This right "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness[, and] serves as a check on the integrity of the system." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (citation, internal quotation marks, and brackets omitted); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("[T]he bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud.  Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.") (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993)).  The public's common law right of access is not absolute, however, and the "common law merely establishes a presumption of public access to judicial records." *Van Waeyenberghe*, 990 F.2d at 848.  This circuit has not assigned a particular weight to the presumption. *Id.* at 848 n.4.  Nor has this court interpreted the presumption in favor of access as creating a burden of proof.  *See Vantage Health Plan, Inc.*, 913 F.3d at 450 (stating that the parties "dispute whether this presumption . . . equates to a burden of proof, and if so, who bears the burden" and refusing to hold that the presumption creates a burden of proof).  In any case, "[t]he district court's

8

No. 18-31052

discretion to seal the record of judicial proceedings is to be exercised charily." *Fed. Savings & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987); *cf. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.").

"In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe*, 990 F.2d at 848. But, "'[t]he presumption however gauged in favor of public access to judicial records[]' [is] one of the interests to be weighed on the [public's] 'side of the scales.'" *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A Aug. 1981) (quoting *Nixon*, 435 U.S. at 602); *see also Van Waeyenberghe*, 990 F.2d at 848 n.4 (same).[5] The "relevant facts and circumstances of the particular case" inform the factors that a court weighs on both sides. *Belo Broadcasting Corp.*, 654 F.2d at 430 (quoting *Nixon*, 435 U.S. at 599).

Not every document, however, is a judicial record subject to the common law right of access. Two records are the subject of this appeal: (1) the sealed court recording of the post-conference meeting and (2) the sealed minutes

---

[5] In *Sealed Search Warrants*, this court stated that it "has not assigned a weight to the presumption in favor of access, unlike some other circuits which have characterized it as 'strong' or others which reduce it to 'one of the interests to be weighed.'" 868 F.3d at 393–94. Notwithstanding this statement, this court follows its decision in *Belo Broadcasting Corp.*, which held that the presumption in favor of public access to judicial records is "one of the interests to be weighed on the [public's] 'side of the scales.'" 654 F.2d at 434 (quoting *Nixon*, 435 U.S. at 602); *see Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000) ("[U]nder the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect."). Moreover, that the presumption in favor of public access is one of possibly multiple factors is not at odds with this court not assigning a weight to the presumption. *See Belo Broad. Corp.*, 654 F.2d at 434 ("'[T]he presumption *however gauged in favor of public access* . . .' [is] one of the interests . . . .") (quoting *Nixon*, 435 U.S. at 602) (emphasis added).

9

No. 18-31052

regarding the settlement conference and post-conference meeting. We address each in turn.

First, the sealed court recording containing the settlement amount is a judicial record. "Once a settlement is filed in district court, it becomes a judicial record. The presumption in favor of the public's common law right of access to court records therefore applies to settlement agreements that are filed and submitted to the district court for approval." *Van Waeyenberghe*, 990 F.2d at 849 (citation omitted)[6]; *cf. Gambale*, 377 F.3d at 143 (collecting cases and concluding that "[t]here is no established presumption of access" to information contained in settlement documents that were "entered into on a confidential basis between the parties and are not themselves a part of the court record"). Here, no written settlement agreement was filed with the district court and Bradley represents that there "was no written settlement agreement" at all. Nonetheless, the parties read the settlement terms, including the settlement amount, into the district court's record at the post-conference meeting. While Bradley suggests that Magistrate Judge Whitehurst simply allowed the parties to memorialize the terms of the

---

[6] There are two possible interpretations of the quoted language from *Van Waeyenberghe*. First, that a settlement agreement becomes a judicial record if two conditions are met: (1) it is filed in district court, and (2) the district court must take some additional action related to the settlement agreement, such as approving the settlement agreement. Second, that a settlement agreement becomes a judicial record if it is filed in district court. In other words, under the second interpretation, the district court need not take some additional action related to the settlement agreement for it to become a judicial record so long as the settlement agreement is filed with the court. We do not and need not choose between these interpretations in this appeal because the settlement agreement at issue satisfies the criteria under both interpretations. *Cf. Enprotech Corp. v. Renda*, 983 F.2d 17, 20–21 (3d Cir. 1993) (concluding that a settlement agreement that had not been "filed with the district court, and [had] never been interpreted or ordered enforced by the district court" was not a judicial record and further concluding that a settlement agreement "will not become part of the public record unless and until the district court may order the parties to comply with its terms"); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994) (same).

No. 18-31052

settlement on the record, Magistrate Judge Whitehurst did more.[7]   As explained, it appears that the parties effectively filed and submitted their settlement agreement for approval at the district court.

Listed in chronological order, at the post-conference meeting, Magistrate Judge Whitehurst (1) had Bradley sworn in to testify as to her background and competence; (2) asked the parties to put the terms of the settlement on the record; (3) asked Bradley's counsel if they agreed to the terms of the settlement, after counsel for Defendants stated the terms; (4) entered a confidentiality order preventing White's parents—non-parties—from disclosing the terms of the settlement agreement *sua sponte*; (5) asked Bradley if she agreed with the terms of the settlement; and (6) sealed the recording of the meeting after Bradley's counsel requested that Magistrate Judge Whitehurst do so.

The parties did not simply submit to the district court that they settled the case.  The recorded transactions between the parties and the district court are unlike a stipulation of dismissal that is filed after an agreement is reached between parties and which does not require court approval.  FED. R. CIV. P. 41(a)(1)(A) (providing for voluntary dismissal without a court order); *Bechuck*, 814 F.3d at 291 ("The notice of dismissal is self-effectuating and terminates the case in and of itself; no order or other action of the district court is required.") (citation and internal quotation marks omitted).  Instead, the district court effectively approved the settlement agreement by confirming that

---

[7] The decision denying vacatur states, without citing to the record, that "the settlement terms were placed on the record as a means of quickly memorializing them without having to confect a written document at the conclusion of the settlement conference." However, the decision appears to contradict itself, stating that the district court was "[n]ot . . . privy to the details of the proceeding [before Magistrate Judge Whitehurst] as it was ongoing" and that, "since the parties requested that the record be sealed, *it may be that* Judge Whitehurst's order was nothing more than recognition of an agreement between the parties. If so, then there *may be* no basis on which this Court is authorized to step in and alter the parties' agreement." (Emphasis added.)

No. 18-31052

Bradley was of sound mind, asking the parties to state the terms of the settlement, ensuring that each party agreed to the terms, and entering—unprompted—a confidentiality order.  The court recording of the settlement terms is, thus, a judicial record subject to the common law right of access.[8]  *See Van Waeyenberghe*, 990 F.2d at 849.

Second, the sealed minutes are also a judicial record.  While this court has not generally defined "judicial record" or yet interpreted minutes as a judicial record, it would defy commonsense if the minutes in this case did not qualify as a judicial record.  *See In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290 ("Although we have never explicitly defined 'judicial records,' it is commonsensical that judicially authored or

---

[8] Even if the settlement terms were not submitted for the district court's approval at the post-conference meeting, the recording may remain a judicial record.  *See supra n.6*; *see also Gambale*, 377 F.3d at 143 ("Of course, the statements at the conference, including the settlement amount, having been reduced to transcript form and filed, were part of a judicial record to which some presumption of openness, however gauged, may have therefore attached," although the settlement documents were "entered into on a confidential basis between the parties" and were "not themselves part of the court record"); *cf. City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697 (7th Cir. 2014) ("Once filed with the court, . . . documents that affect the disposition of federal litigation are presumptively open to public view . . . unless a statute, rule, or privilege justifies confidentiality.") (citation, internal quotation marks, and brackets omitted); *In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) ("Although we have never explicitly defined 'judicial records,' it is commonsensical that judicially authored or created documents are judicial records."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("In order to be designated a judicial document, the item must be relevant to the judicial function and useful in the judicial process.") (citation and internal quotation marks omitted); *In re Boston Herald, Inc.*, 321 F.3d 174, 189 (1st Cir. 2003) ("In cases considering the common law right, this court has often used a definition of 'judicial record' which refers to materials on which a court relies in determining the litigants substantive rights. . . . [W]e have applied this definition to documents on which a court relied in approving a consent decree because that approval settled a civil enforcement action.") (citation and internal quotation marks omitted); *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) ("The status of a document as a 'judicial record' . . . depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.  While filing clearly establishes such status, a document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal.") (citation omitted).

12

No. 18-31052

created documents are judicial records."). Notably, while Bradley objected to Appellants' motion for vacatur because it would unseal the settlement terms, the minutes do not contain the terms, including the settlement amount.

We now turn to the factors the district court considered in balancing Appellants' common law right of access to the sealed recording and minutes. The district court weighed, on the one hand, "the child's privacy interest in being protected from financial predators or others who would harass the child simply because they know the amount received when the suit was settled, the protection of the judicial process in permitting orders to be sealed, and the chilling effect that the public's knowledge of the settlement might have on settlement negotiations and jury deliberations in upcoming similar cases[.]" On the other hand, the district court weighed "the media's interest in releasing a sensational story regarding the amount of money paid to resolve the lawsuit without knowing anything about how the decisions were ultimately reached in the parties' settlement negotiations." The district court appeared to place the most weight on the child's privacy interest, finding that "the minor child's privacy interest outweighs the public's right to know the amount paid to settle the case."

While the district court did not balance this possible factor, the district court also considered that "keeping the settlement terms confidential [might have been] a factor in the parties' decision to settle." The district court did not give this potentiality any weight because the record does not state whether keeping the settlement terms confidential was such a factor. Nor do we. Although the parties agreed to keep the settlement terms confidential at the post-conference meeting, it is unclear whether this agreement was a factor in the parties' decision to settle. *Cf. Seals v. Herzing Inc.–New Orleans*, 482 Fed. App'x 893, 896 (5th Cir. 2012) (unpublished) ("In light of the parties' agreement to maintain confidentiality, the express statement that the confidentiality was

No. 18-31052

a material inducement for [a party] to settle, the fact that public policy favors voluntary settlements, and the limitation of the district court's order to . . . three exhibits [(i.e., two confidential consent awards and an arbitration transcript)], we conclude that the district court did not abuse its discretion in ordering these exhibits sealed.") (citation and internal quotation marks omitted); *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011) (holding that a district court "[cannot] rely on the general interest in encouraging settlement to justify the sealing of an agreement which the parties mistakenly believed would remain confidential") (citation and internal quotation marks omitted).

At the district court, Bradley did not argue in her opposition to the motion to vacate that keeping the settlement terms confidential was a factor in the parties' decision to settle, that such a factor should affect the outcome of the motion, or that the district court assured the parties of confidentiality at the post-conference meeting.[9] *In re Novack*, 639 F.2d 1274, 1276–77 (5th Cir. Unit B Mar. 1981) ("As a general rule, appellate courts refuse to consider an issue raised for the first time on appeal."). Nor does Bradley argue the same on appeal. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived."). Instead, on appeal, Bradley argues that "it *appears* that all

---

[9] This last possible argument would be at odds with the order of events at the post-conference meeting: Bradley requested that the district court seal the recording of the post-conference meeting at the end of the meeting, after the parties already disclosed the settlement terms and agreed to them. *Cf. LEAP Sys., Inc.*, 638 F.3d at 222 ("[W]e find LEAP's reliance on the District Court's assurances of confidentiality reasonable and sufficient to outweigh the public's common law right of access" where "LEAP would not have entered into the settlement agreements *but for* the Court's assurance of confidentiality.") (emphasis in original); *Gambale*, 377 F.3d at 143–44 & n.8 (holding that the details of a confidential settlement agreement disclosed during "a relatively informal conference relating to settlement," on the basis of the court's "assurances of confidentiality," warranted only a "weak" presumption of public access).

14

No. 18-31052

Judge Whitehurst did was memorialize a mutual confidentiality agreement" (emphasis added), and that Appellants do not "show whether Judge Whitehurst made any ruling at all."[10]  But it is undisputed that Magistrate Judge Whitehurst sealed the court recording containing the settlement amount and the minutes regarding the settlement conference and post-conference meeting.

We now address each factor the district court balanced and, additionally, consider the following factors in favor of disclosure: (1) that the settlement agreement involves public officials and matters of legitimate public concern and (2) the presumption of the public's right of access.

First, the district court weighed in favor of non-disclosure "the child's privacy interest in being protected from financial predators or others who would harass the child simply because they know the amount received when the suit was settled."  However, it is public information that a settlement was reached in this case and that Bradley, AJW's mother and sole living parent, is in control of AJW's property.  Pursuant to Louisiana law, "Each parent has the right and the obligation to administer the property of the child.  The parent must do so as a prudent administrator and is answerable for any damage caused by his fraud, fault, default, or neglect."  LA. CIV. CODE ANN. ART. 229. There is no evidence AJW would face financial predation where Bradley is the property's steward.

Further, Bradley does not show or argue that Bradley or AJW has experienced any financial predation or financially-motivated harassment since the settlement was reached approximately two years ago.  The district court

---

[10] As stated *supra*, this court has not interpreted the common law right of access as requiring a party to carry a burden of proof.  *See Vantage Health Plan, Inc.*, 913 F.3d at 450; *cf. In re Cendant Corp.*, 260 F.3d at 194 ("The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.") (citation and internal quotation marks omitted).

No. 18-31052

and Bradley merely speculate that disclosing the settlement amount would increase the possibility of financial predation and related harassment and do not appear to account for the already publicly available information, namely, that a settlement was reached in this case and that Bradley is the steward of the settlement property. Nor do they cite any authority that supports the proposition that disclosing a settlement amount increases the possibility of financial predation or related harassment or show that any court has weighed such a possibility in favor of nondisclosure. Nor is that proposition necessarily true as a matter of common sense: an effort to keep undisclosed a settlement amount where it is known that a settlement was reached and who the steward of the settlement amount is might increase the possibility of financial predation or related harassment because a financial predator might suspect that the settlement amount is much larger than the actual amount. *See, e.g.*, Tomas Well, *More than $6M paid out by sheriffs' offices in judgments, settlements since 2015; attorney fees add another $1.4M*, LOUISIANA VOICE (July 16, 2018), https://louisianavoice.com/2018/07/16/more-than-6m-paid-out-by-sheriffs-offices-in-judgments-settlements-since-2015-attorney-fees-add-another-1-4m/ (speculating on the settlement amount in this case).

Moreover, lifting the seals here would not reveal AJW's name or other information that has been identified as warranting nondisclosure in cases involving a minor. *See, e.g.*, FED. R. CIV. P. 5.2 (stating only the initials of a person "known to be a minor" may be provided in court filings); *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 607 (1982) (holding, in the First Amendment context, that "safeguarding the physical and psychological well-being of a minor" who is a sex crime victim in a criminal case is a "compelling" interest); *Jaufre ex rel. Jaufre v. Taylor*, 351 F. Supp. 2d 514, 516–19 (E.D. La. 2005) (collecting cases where a minor's information— such as the minor's name and confidential documents from child protective

16

No. 18-31052

proceedings—was protected, and sealing certain judicial records because they variously contained "detailed descriptions of [the minor's] behavioral problems" and medical and emotional conditions, "pictures of [the minor's] injuries that could be humiliating or stigmatizing," and the names of other children not parties to the lawsuit). For these reasons, this factor does not weigh in favor of non-disclosure.

Second, the district court weighed in favor of non-disclosure "the protection of the judicial process in permitting orders to be sealed." The district court, however, did not elaborate on this factor or cite any case where this was considered a factor. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598. This power, however, is not an interest, and there is a presumption in favor of disclosure. *See Van Waeyenberghe*, 990 F.2d at 848. The court must weigh the interests in favor of and against disclosure to determine how to exercise its power. *See id.* To hold otherwise would enshrine a circular logic according to which a district court's sealing order is appropriate because the district court has the power to issue the sealing order. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) ("[S]imply because courts have the power to grant orders of confidentiality does not mean that such orders may be granted arbitrarily."). For these reasons, "the protection of the judicial process in permitting orders to be sealed" carries no weight and should not factor into the analysis at all.

Third, the district court weighed in favor of non-disclosure "the chilling effect that the public's knowledge of the settlement might have on settlement negotiations and jury deliberations in upcoming similar cases." The district court noted that, at the time of its order, other civil cases alleging violations similar to those alleged in this case were pending against the Iberia Parish Sheriff's Office. The district court does not explain how disclosing the

17

No. 18-31052

settlement amount would have a "chilling effect" on negotiations and jury deliberations in similar cases. "Chilling effect" is a compound noun, the legal definition of which is "a usually undesirable discouraging effect or influence." *Chilling effect*, THE MERRIAM-WEBSTER.COM LEGAL DICTIONARY, https://www.merriam-webster.com/legal/chilling%20effect (last visited Nov. 25, 2019). The noun is "used especially of First Amendment violations." *Id.*; *see, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 2 (1972). The settlement amount's disclosure presumably might expose the Iberia Parish Sheriff's Office to additional liability and litigation and, as such, might cause cases to settle differently than they would otherwise, but it is unclear how these possibilities would lead to or result from a chilling effect. In any case, that disclosure might harm the Iberia Parish Sheriff's Office, its sheriff, or sheriff's deputies by exposing them to additional liability and litigation is of no consequence; "a litigant is not entitled to the court's protection from this type of harm" where it arises solely because of the common law right of access. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003); *cf. Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 637 (7th Cir. 2002) (concluding that a party's "desire to keep the amount of its payment quiet (perhaps to avoid looking like an easy mark, and thus drawing more suits) is not nearly on a par with national security and trade secret information," which are traditionally kept secret for important policy reasons). Further, it is unclear how the risk of jury prejudice would lead to or result from a chilling effect. And in any event, any risk of jury prejudice because of the settlement amount's disclosure is addressable through voir dire.

Notably, Defendants did not oppose Appellants' motion for vacatur. Thus, they did not argue that disclosure would cause a chilling effect in similar cases involving them or the Iberia Parish Sheriff's Office, nor did they argue that disclosure would otherwise prejudice them. Indeed, any such argument—

No. 18-31052

even if legally supportable—would be unconvincing considering the public availability of numerous other settlement amounts in similar civil suits filed against the Iberia Parish Sheriff's Office, its sheriff, or sheriff's deputies since Ackal began serving as sheriff in 2008. *See* John Simerman, *The Advocate, KATC challenge sealing of Iberia Parish sheriff's settlement over gun death in patrol car*, THE ACADIANA ADVOCATE (July 19, 2018), https://www.theadvocate.com/acadiana/news/article_f553600e-8b5f-11e8-92ec-0b8bcffe3b28.html ("Settlements of those claims against Ackal, not including Bradley's, totaled $2.96 million[.]"); Nathaniel Rich, *The Preacher and the Sheriff*, N.Y. TIMES MAGAZINE (Feb. 8, 2017), https://www.nytimes.com/2017/02/08/magazine/the-preacher-and-the-sheriff.html ("[Whitney] Lee has filed a civil suit against Ackal and two of his deputies, one of 30 or so that have been filed since he took office; at least 10 have been settled, for a cumulative sum of about $1.1 million."); Tomas Well, *More than $6M paid out by sheriffs' offices in judgments, settlements since 2015; attorney fees add another $1.4M*, LOUISIANA VOICE (July 16, 2018), https://louisianavoice.com/2018/07/16/more-than-6m-paid-out-by-sheriffs-offices-in-judgments-settlements-since-2015-attorney-fees-add-another-1-4m/ (compiling settlement amounts in similar civil cases filed against Ackal).  For the reasons above, this factor does not weigh in favor of disclosure.

Fourth, and finally, the district court weighed in favor of disclosure "the media's interest in releasing a sensational story regarding the amount of money paid to resolve the lawsuit without knowing anything about how the decisions were ultimately reached in the parties' settlement negotiations." This statement of the factor does not adequately address Appellants' interest in this case.  While the facts of this case may be "sensational," the media's interest in judicial records and proceedings is generally more important than

No. 18-31052

the district court's characterization would imply. The Supreme Court has stated:

> A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism. . . . [W]e have consistently required that the press have a free hand, even though we sometimes deplored its sensationalism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966). Nonetheless, "[t]he Supreme Court has made it plain that all persons seeking to inspect and copy judicial records stand on an equal footing, regardless of their motive for inspecting such records." *Leucadia, Inc.*, 998 F.2d at 167 ("[T]he press has no greater right of access than does the general public[.]") (citing *Nixon*, 435 U.S. at 609).

Appellants and the amici[11] argue that White's death and the circumstances around it—particularly, the allegations that an Iberia Parish sheriff's deputy shot White and then covered it up—are matters of local and national concern. We agree. *See, e.g.*, Michael Kunzelman, *Settlement resolves suit in handcuffed man's shooting death in Lafayette*, THE ACADIANA ADVOCATE (Mar. 16, 2018), https://www.theadvocate.com/acadiana/news/courts/article_c929bf86-294f-11e8-8e02-e78485ca840d.html; Nathaniel Rich, *The Preacher and the Sheriff*, N.Y. TIMES MAGAZINE (Feb. 8, 2017), https://www.nytimes.com/2017/02/08/magazine/the-preacher-and-the-sheriff.html; Jonathan Capehart, *Victor White's unbelievable 'Houdini*

---

[11] The amici are The Reporters Committee for Freedom of the Press, The Joseph L. Brechner Center for Freedom of Information, and thirty-two other media or media-related organizations.

*handcuff' suicide*, WASH. POST (Sept. 2, 2014),
https://www.washingtonpost.com/blogs/post-partisan/wp/2014/09/02/victor-
whites-unbelievable-houdini-handcuff-suicide/.   Further, as the district court
noted, this and similar civil cases were "play[ing] out against the backdrop of
the recent criminal prosecution of the [Iberia Parish] sheriff himself[, who was
a defendant in this case,] and the guilty pleas of several of his deputies with
regard to the use of excessive force in making arrests and during the
incarceration of prisoners in the parish jail."   These prosecutions are also of
local and national interest.   *See, e.g.*, Nathaniel Rich, *The Preacher and the
Sheriff*, N.Y. TIMES MAGAZINE (Feb. 8, 2017),
https://www.nytimes.com/2017/02/08/magazine/the-preacher-and-the-
sheriff.html; Bryn Stole & Jim Mustian, *Ruled not guilty, Iberia Sherriff Louis
Ackal says 'I'm not a crook,' vows to clean out 'rouges'*, THE ACADIANA ADVOCATE
(Nov. 4, 2016),
https://www.theadvocate.com/acadiana/news/courts/article_1f35ff7e-a2b6-
11e6-920f-3b82c2c4ee1c.html.   Public access to the settlement amount will
shed light on the resolution of a case that is of local and national interest and
related to the criminal prosecutions of the Iberia Parish sheriff and sheriff's
deputies for allegedly violating the law in ways similar to those that were
alleged in this case—prosecutions that are also of local and national interest.
For these reasons, this factor considered by the district court represents a
mischaracterization of the public's right of access.   Therefore, we consider in
its place the two factors discussed below.

First, the settlement agreement involves public officials or parties of a
public nature and matters of legitimate public concern.   The district court
declined to balance this factor.   As the Third Circuit in *Pansy* stated:

> If a settlement agreement involves public officials or parties of a
> public nature, and involves matters of legitimate public concern,

No. 18-31052

that should be a factor weighing against entering or maintaining an order of confidentiality.  On the other hand, if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

*Pansy*, 23 F.3d at 788 (citation and footnote omitted).[12]  The district court discounted this opinion, stating that *Pansy* stands for the proposition that "disclosure should be favored when it is a public person or governmental entity that is seeking to prevent disclosure of the settlement agreement," which is not the case here.[13]  While the *Pansy* court concluded that a party's "privacy interests are diminished" when that party is a public person, 23 F.3d at 787, it also stated, "The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official."  *Id.* at 786.  In other words, the district court conflated the *Pansy* court's discussion of a public person's privacy interests with its discussion of

_____

[12] The *Pansy* court used the term "confidentiality order" to liberally refer to "any court order which in any way restricts access to or disclosure of any form of information or proceeding, including but not limited to . . . 'sealing orders[.]'"  *Pansy*, 23 F.3d at 777 n.1.

[13] The *Pansy* court concluded that the media-intervenors who sought access to a settlement agreement that was subject to a district court confidentiality order did not have a common law right of access to the settlement agreement because the settlement agreement was not filed with the district court and was therefore not a judicial record.  *Pansy*, 23 F.3d at 780–783. (As determined *supra*, the same is not true here: the court recording of the settlement terms and the minutes regarding the settlement conference and recorded meeting are judicial records.)  Nonetheless, the *Pansy* court concluded that the media-intervenors "ha[d] an interest in vacating the Order of Confidentiality even though [the court had] rejected their attempt to obtain the Settlement Agreement under the right of access doctrine."  *Id.* at 784.  This interest stemmed from the district court's "power to modify or lift confidentiality orders that it has entered."  *Id.*  The *Pansy* court adopted a "balancing process" to address whether "good cause" existed for the confidentiality order.  *Id.* at 786–87.  Similarly, here, "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure."  *Van Waeyenberghe*, 990 F.2d at 848.  Given the similarity between the inquiry here and the inquiry that was before the *Pansy* court, consideration of the *Pansy* court's reasoning for establishing as a balancing factor whether a party to a settlement agreement is a public official and involves matters of legitimate public concern is appropriate here.  In any case, as discussed *infra*, other courts have applied rules similar or identical to the rule in *Pansy* in considering a party's common law right of access.

No. 18-31052

the public's interest in disclosure.  Other courts have applied rules similar or identical to the rule in *Pansy* in considering a party's common law right of access.  *See, e.g.*, *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, . . . whether the information concerns public officials or public concerns[.]"); *Under Seal v. Under Seal*, 27 F.3d 564, 1994 WL 283977, at *2 (4th Cir. 1994) (unpublished) ("Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater.") (collecting cases).  Here, at least one of the parties is a public official or party of a public nature, and the public's interest in the settlement amount is particularly legitimate and important, not least because disclosure will allow the public to monitor the expenditure of taxpayer money.  For these reasons, this factor weighs in favor of disclosure.

Second, it does not appear that the district court weighed as a factor in favor of disclosure the presumption of the public's right of access.  *See Belo Broad. Corp.*, 654 F.2d at 434.  Ultimately, this factor alone outweighs any interest favoring nondisclosure.

## V. CONCLUSION

The district court abused its discretion in denying Appellants' motion for vacatur by relying on erroneous conclusions of law and misapplying the law to the facts.  *See Allen*, 813 F.3d at 572.  Accordingly, we REVERSE and VACATE the sealing orders in their entirety.[14]

---

[14] Specifically, we vacate the orders sealing the (1) court recording containing the settlement amount and (2) minutes regarding the settlement and recorded meeting.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 18-31052

————————————————

D.C. Docket No. 6:15-CV-459

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2020

Lyle W. Cayce
Clerk

SHANDELL MARIE BRADLEY, Tutrix on behalf of her minor child A J W,

        Plaintiff - Appellee

v.

LOUIS M. ACKAL, Individually and in his official capacity; JUSTIN ORTIS, Individually and in his official capacity; XYZ DEPUTIES, Individually and in their official capacity; XYZ INSURANCE COMPANY, on behalf of Sheriffs Office Iberia Parish,

        Defendants - Appellees

v.

CAPITAL CITY PRESS, L.L.C., doing business as The Advocate; KATC COMMUNICATIONS, L.L.C.,

        Movants - Appellants

Appeal from the United States District Court for the
Western District of Louisiana

Before JOLLY, GRAVES, and HIGGINSON, Circuit Judges.

J U D G M E N T

    This cause was considered on the record on appeal and was argued by counsel.

    It is ordered and adjudged that the judgment of the District Court is reversed and vacated to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that plaintiff-appellee pay to movants-appellants the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued
as the mandate on** Apr 30, 2020

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

April 30, 2020

Mr. Tony R. Moore
Western District of Louisiana, Lafayette
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

        No. 18-31052   Shandell Bradley v. Louis Ackal, et al
                       USDC No. 6:15-CV-459

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        *Mary Stewart*

                        By: _____
                        Mary C. Stewart, Deputy Clerk
                        504-310-7694

cc:
    Mr. Bruce D. Brown
    Mr. Michael Sam Finkelstein
    Mr. Craig Edmond Frosch
    Ms. Carol Denise Powell-Lexing
    Mr. Scott L. Sternberg